IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS ALBERTORIO-SANTIAGO, et al.,

    Plaintiffs,

v.

RELIABLE FINANCIAL SERVICES, et al.,

    Defendants.

CIVIL 07-1785 (GAG)

## OPINION AND ORDER

    Plaintiffs, Carlos Albertorio Santiago ("Santiago") and his son, Carlos Joel Albertorio Feliciano ("Feliciano") (hereinafter collectively "plaintiffs"), brought this action against Reliable Financial Services, Inc. ("Reliable"), Ricardo Acevedo-Correa ("Correa"), Osvaldo Acevedo-Pérez ("Pérez"), Michelle Chevalier Torres ("Chevalier"), and the Hon. Roberto Sánchez Ramos for alleged constitutional rights violations committed in the course of the repossession of plaintiffs' vehicle. Plaintiffs filed this civil suit pursuant to Section 1983, 42 U.S.C. § 1983, alleging a violation of their right to due process under the Fourteenth Amendment, as well as state law claims of negligence under Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141-5142, seeking economic, emotional, and punitive damages.[1] Plaintiffs also request a declaratory judgment providing that the self-help repossession provision in the Puerto Rico Commercial Transactions Act, P.R. Laws Ann. tit. 19, § 2203,[2] is unconstitutional. Defendant

---

[1] The court notes Puerto Rico law does not allow punitive damages. Ganapolsky v. Park Gardens Dev. Corp., 439 F. 2d 844, 846 n.1 (1st Cir. 1971).

[2] In compliance with this court's order (Docket No. 13), plaintiffs specified Section 2203 of the Commercial Transactions Act as the self-help statute presumably invoked by Reliable while

**Civil No. 07-1785 (GAG)**

Reliable moved for summary judgment as to all causes of action (Docket No. 87), plaintiffs responded in opposition (Docket No. 94), and Reliable replied (Docket No. 101). Defendant Correa moved to join both Reliable's motion for summary judgment and reply (Docket Nos. 90 & 102), which requests were granted by the court (Docket Nos. 91 & 103). After a thorough review of the applicable law, the court **DENIES** Reliable's motion for summary judgment (Docket No. 87).

**I.    Standard of Review**

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law'." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of

---

conducting the repossession. See Docket No. 19 at 5.

**Civil No. 07-1785 (GAG)**

Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.      Relevant Material Facts

Consistent with the summary judgment standard, the court states the facts in the light most favorable to the plaintiffs. See Iverson, 452 F.3d at 98. Additionally, in accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations. See Local Rule 56(e). The court has disregarded all argument, conclusory allegations, speculation, and improbable inferences disguised as facts. See Forestier Fradera, 440 F.3d at 21; Medina-Muñoz v. R.J. Reynolds Tabacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

On February 6, 2003, defendant Reliable and plaintiff Santiago entered into an agreement whereby Reliable would provide financing for Santiago's purchase of a 2000 Ford Explorer. Santiago encumbered the title to the Explorer in order to secure payment of the purchase price balance, in accordance with the terms of the Purchase and Finance Agreement and the Puerto Rico Commercial Transactions Act, P.R. Laws Ann. tit. 19, § 401 et seq.. Santiago went into arrears and never paid the outstanding balance owed on the financing. Reliable filed a state action to collect the outstanding balance on the Purchase and Finance Agreement, which action was dismissed with prejudice for want of prosecution some time after the repossession at issue in this case took place. That judgment was entered on May 15, 2007, with notification to the parties on July 23, 2007.

On December 18, 2006, while the state collection action was still pending, a pre-repossession letter was sent to Santiago informing him that he had failed to make his payment to Reliable and that the Explorer was subject to repossession. Santiago has alleged that he never received this letter, which was sent to "Urb. Torremolinos, Marginal Carr. 177 B4, Guaynabo, PR 00969" ("Torremolinos"). Though Santiago had moved from the Torremolinos address to "Highland Park, Number 746, Acacia Street, San Juan, PR 00924" ("Highland Park"), he stated in his deposition that he used both his current and former address for his correspondance.

On April 14, 2007, Reliable conducted a self-help repossession of the automobile pursuant

**Civil No. 07-1785 (GAG)**

to the Commercial Transactions Act, by way of its agent, defendant Correa. On the day of the repossession, Santiago was not at home, though his son, plaintiff Feliciano, was present. The Explorer was parked on the street in front of their house. Feliciano stated in his deposition that around 9:00 or 9:30 a.m. he came out of the house because he heard the sound of clanking chains outside. Upon exiting the house, he saw a flatbed tow truck parked in front of the Explorer and a police car parked accross the street, in front of their neighbor's house. In his subsequent report of the repossession, Correa indicated that he had requested an escort from the police department because the repossession was to take place in a neighborhood that is next to the Monte Park public housing project.

According to Feliciano, when he came out of the house the tow truck operator was fastening chains unto the Explorer. Feliciano spoke with Correa, who identified himself as an agent from the bank and indicated to Feliciano that the SUV was being repossessed because money was owed to the bank. During Feliciano's interaction with Correa, he did not speak with any police officers, nor did anyone make physical contact with him or threaten him in any way. However, Feliciano testified that the police officers, defendants Pérez and Chevalier, were standing next to Correa, at a distance from which they could hear the conversation. At this point, Feliciano told Correa to wait before taking the vehicle because he wanted to call his father, and went into the house to contact Santiago over the phone. According to Santiago, he told his son over the phone not to let Reliable take the Explorer until he arrived or saw the paperwork.

After speaking with his father, Feliciano came out of the house a second time and saw that the tow truck operator had already secured the Explorer to the truck and was towing it onto the flatbed. He testified that, upon seeing this, he told Correa to wait because his father was on his way. He also stated that the police officers were standing next to Correa at that time. According to Feliciano, Correa ignored him and walked away toward his vehicle, for which reason he called out to Correa loudly several times, telling him to wait. When Feliciano began to walk in Correa's direction in order to get his attention, officer Pérez crossed over in front of him, pointed at him, and

4

**Civil No. 07-1785 (GAG)**

told him to lower his voice and calm down "unless he wanted to have problems with [the officer]." Docket No. 87-3 at 27. Although officer Pérez did not make physical contact with Feliciano, the latter testified that he had to step back in order to avoid contact: "If I hand't steped back a little bit, he most likely would've poked me in the chest." Id. at 31. Moreover, Feliciano testified that officer Pérez spoke to him loudly and agressively. After this confrontation with the police officer, Feliciano went back inside the house. He never had any communication with the second police officer, defendant Chevalier.

According to plaintiff Santiago, the first time he saw the Explorer after the repossession was that same day, on the back of a flatbed truck, as it was leaving his neighborhood. Santiago stated that the tow truck was being escorted by a police car and was taken to the Monte Hatillo Police Headquarters. There, Santiago spoke with Correa and with a police officer who he thought was involved in the repossession, and told them they were making a mistake because the vehicle was the object of ongoing litigation in the courts of the Commonwealth of Puerto Rico. Santiago testified that he also requested to take some personal property from the vehicle, but was not allowed to do so because he refused to sign a piece of paper required by Correa. Santiago asked for Correa's name and telephone number and he complied, identifying himself as a collection agent for Reliable. A post-repossession letter was sent to Santiago at the Torremolinos address on the same date as the repossession, though he claims to have never received it. After the repossession, Santiago did not contact anyone from Reliable, but testified that he contacted his attorney.

On August 28, 2007, plaintiffs filed the instant civil suit against defendants herein (Docket No. 1), and on December 19, 2008, Reliable filed the motion for summary judgment that is presently before the court (Docket No. 87). Reliable moves for summary judgment on the grounds that (1) it is not a "state actor" for purposes of Section 1983 and that (2) plaintiffs cannot establish a negligence cause of action under Articles 1802 or 1803 of the Puerto Rico Civil Code. The court will examine these grounds to determine whether Reliable has established that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law.

**Civil No. 07-1785 (GAG)**

## III. Discussion

### A. State Action

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State [. . .].' " Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). Therefore, a plaintiff claiming a Section 1983 violation must be able to prove that a person or persons (1) acting under color of state[3] law (2) deprived him of a federal constitutional or statutory right. See Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 7-8 (1st Cir. 2005) (citing Rockwell v. Cape Cod Hospital, 26 F.3d 254, 256 (1st Cir. 1994). If the plaintiff cannot prove facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, he cannot prevail in his Section 1983 claim.

In the present case, Reliable does not appear to question plaintiffs' allegation that they had, at the time of the repossession, a constitutionally protected possessory interest in the continued use of Santiago's vehicle, even though he had not yet acquired full title. Indeed, the Supreme Court has held that the replevy of chattels –whether or not the person has full title and regardless of whether their possession is in dispute– deprives the person of his possesory interests in those chattels, which are within the protection of the Fourteenth Amendment. See Fuentes v. Shevin, 407 U.S. 67, 84 (1972). Thus, it cannot be disputed that "[t]he Constitution requires notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property," Barret v. Harwood, 189 F.3d 297, 301 (2nd Cir. 1999) (citing Fuentes, 407 U.S. at 96-97), and that, therefore, plaintiffs have alleged a deprivation of a federal right, since no prior hearing was held before

---

[3] "For the purposes of section 1983, Puerto Rico enjoys the functional equivalent of statehood, and thus the term state law includes Puerto Rico law." Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 491 n.2 (1st Cir. 1996) (internal quotation marks omitted).

**Civil No. 07-1785 (GAG)**

plaintiffs were deprived of possession of their vehicle. The disagreement is over whether Reliable and its agent, defendant Correa, acted under color of state law when they repossessed Santiago's vehicle, by virtue of the involvement of Puerto Rico Police Department ("PRPD") officers in the repossession.

"In a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." Lugar, 457 U.S. at 929; see also United States v. Price, 383 U.S. 787, 794 (1966). The state action requirement implies that "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." Lugar, 457 U.S. at 937. The Supreme Court declared in Lugar that "fair attribution" has two components. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state." Id. "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id.; see also Alberto San, Inc. v. Consejo de Titulares del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir. 2008); Estades-Negroni, 412 F.3d at 4. In the present case, the first part of the Lugar test is satisfied, as the right to self-help repossession has been authorized in Puerto Rico through enactment of the Puerto Rico Commercial Transactions Act, P.R. Laws Ann. tit. 19, § 2203, and it is undisputed that defendants were asserting their right under this statute when repossessing Santiago's vehicle.

As to the second part of the Lugar test, the First Circuit has employed several approaches to determine if, under the circumstances of the case, a private party can be fairly characterized as a state actor: the public function test, the state compulsion test, and the nexus/joint action test. See Estades-Negroni, 412 F.3d at 5. The first is clearly not applicable here, as defendants in repossessing plaintiffs' car were not performing "a public function that has been 'traditionally the exclusive prerogative of the State.'" Id. (quoting Blum v. Yaretsky, 457 U.S. 991, 1005 (1982)); see Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 161, 163 n.11 (1978) (holding that "the settlement of disputes between debtors and creditors is not traditionally an exclusive public function," and clarifying that

**Civil No. 07-1785 (GAG)**

1  "the conduct of private actors in relying on the rights established under [certain] liens to resort to self-help remedies does not permit their conduct to be ascribed to the State.") (internal citations omitted).  The second test considers whether "the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Estades-Negroni, 412 F.3d at 5 (quoting Blum, 457 U.S. at 1004).  There is no such coercion or significant encouragement alleged in this case.  The undisputed facts are that defendants solicited the help of the PRPD in effectuating the repossession, not the other way around.  Moreover, the existence of the self-help repossession provision in state law, and defendants' use of the same to effectuate the repossession, is not enough, on its own, to constitute compulsion by the state.  See Rockwell, 26 F. 3d at 258; Barrios-Velázquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 493 (1st Cir. 1996) (for state-granted authority to justify a finding of state action, "that authority must be connected to the aim of encouraging or compelling the specific complained-of conduct").  The Puerto Rico Commercial Transactions Act merely provides a mechanism through which secured private parties can, in their discretion, pursue repossession without judicial process when their debtors are in default, if this can be done without a breach of the peace.  See P.R. Laws Ann. tit. 19, § 2203.  Action by a private party pursuant to a state statute, without something more, is not sufficient to justify characterization of the private party as a "state actor."  See Lugar, 457 U.S. at 939.

Plaintiffs are more specifically alleging joint participation between private citizens and the state or its agents in the repossession, which falls under the nexus/joint action test.  "[This] test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Estades-Negroni, 412 F.3d at 5 (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)).  Plaintiffs herein predicate their Section 1983 claim on the thesis that the engagement of PRPD officers in the repossession of plaintiffs' vehicle and their actions at the scene ingrained Reliable's self-help

**Civil No. 07-1785 (GAG)**

repossession with the element of "state action." The First Circuit has not addressed directly the point at which official involvement in an otherwise private repossession is sufficient to constitute state action. Although other courts have considered the question in analogous circumstances, there is no bright line indicating the exact point at which an officer's presence and actions at a repossession become state action in aid of the repossession. See Barrett v. Harwood, 189 F.3d 297, 302-03 (2nd Cir. 1999).

At one end of the spectrum are situations involving *de minimis* police intervention not amounting to state action, such as their mere presence at the scene. See United States v. Coleman, 628 F.2d 961, 963-63 (6th Cir. 1980) (no state action where police parked around the corner from the scene of repossession and were simply standing by in case of trouble); Abbot v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998) (no state action as to two of the officers involved in the seizure of a van who were called to the scene to check documentation and did nothing more than this). Further along the spectrum are situations involving more than mere presence, yet still insufficient to constitute state action in aid of the repossession. Defendant Reliable invokes one such case, Menchaca v. Chrysler Credit Corp, 613 F.2d 507 (5th Cir. 1980), in support of its proposition that the officers' intervention in the present case does not rise to the level of state action. In Menchaca, the Fifth Circuit held there was no state action where the police officers were summoned after the debtor resisted repossession, informing the debtor that "repossession was a civil matter and that the only reason the police were there was to quiet a reported disturbance." Id. at 510. The court found no state action, despite the allegation of the debtor that the officer said he would arrest the debtor if he did not give his keys to the repossessors. Id. at 510-12. In contrast with the Fifth Circuit's decision in Menchaca, several other circuits addressing this issue –the involvement of a police officer in a repossession or similar activity beyond mere presence– have found state action or ruled that the issue at least survived a motion for summary judgment. See, e.g., Soldal v. County of Cook, 942 F.2d 1073, 1075 (7th Cir. 1991) rev'd on other grounds, 506 U.S. 56 (1992) (state action issue survives summary judgment when police presence at trailer removal and eviction of occupants

**Civil No. 07-1785 (GAG)**

prevented plaintiff from resisting eviction); Jones v. Gutschenritter, 909 F.2d 1208, 1210-13 (8th Cir. 1990) (state action issue survives summary judgment where debtor saw uniformed, armed officer standing with individual disconnecting electricity and officer did not depart before disconnection was complete); Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th Cir. 1981) (state action found where plaintiff yelled at repossessor to get away from his truck; officer then ordered plaintiff to stand back or get away, and told plaintiff that officer was there to stand by, and that further interference would result in arrest); Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir. 1985) (state action issue survives summary judgment where police officer arrived with repossessor, giving the repossession the appearance of legality and intimidating debtor into not exercising his right to resist). As articulated by the Second Circuit, the "crucial question" is whether or not the police officers were "taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession." Barrett 189 F.3d at 302-03. If the police officers were simply standing by in case there was a breach of peace, their involvement is *de minimis* and does not amount to state action. Id.

After considering the facts in the light most favorable to the non-movants, the court finds that summary judgment at this stage is improper. Pérez and Chevalier's involvement in the repossession at issue here was more extensive that that of the officers in Menchaca. In that case, the officers arrived at the scene and became involved only *after* a breach of the peace was threatened. Here, by contrast, Pérez and Chevalier arrived on the scene *with the repossessor*. Though Correa stated that he summoned the police because the repossession was to take place in a dangerous neighborhood, his motivation does not change the fact that the police were involved from the outset. Later, as the repossession took place, the officers stood by at a distance from which they could hear Feliciano's conversation with Correa. The court concedes that there is no evidence that the police officers encouraged or directed Correa to repossess the vehicle in a particular manner. However, a rational trier of the facts could conclude that officers Pérez and Chevalier's arrival with the repossessor gave

**Civil No. 07-1785 (GAG)**

the repossession "a cachet of legality and had the effect of intimidating [Feliciano] into not exercising his right to resist, thus facilitating the repossession." Booker, 776 F.2d at 274. A jury could also find that when the officers intervened with Feliciano, they did so in order to prevent him from resisting repossession. What is more, the fact that the police officers escorted Correa away from plaintiffs' house after the repossession and took Santiago's car to police headquarters could also lead to the conclusion that the police and Correa acted in concert to effectuate the repossession. Though this appears to be a borderline case, the court, in an abundance of caution, has decided to submit the case to the jury as required by Rule 56. Therefore, defendant Reliable's motion for summary judgment on this ground is **DENIED**.

### B.     State Law Claims under Article 1802 and 1803

Article 1802 of the Civil Code of Puerto Rico imposes liability on any person or entity who by an act or omission causes damage to another through fault or negligence. See P.R. Laws Ann. tit. 31, § 5141; see also De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998) (citing Valle v. American Int'l Ins. Co., 8 P.R. Offic. Trans. 735, 738, 108 P.R. Dec. 692 (1979)). "Negligence has been defined by the Commonwealth courts as the failure to exercise due diligence to avoid foreseeable risks." De-Jesus-Adorno, 160 F.3d at 842 (quoting Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir.1991)). A plaintiff suing for personal injuries on a negligence theory "under Article 1802 must establish (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." Id. (quoting Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 124 F.3d 47, 50 (1st Cir. 1997)); see also Sociedad de Gananciales v. González Padín, 17 P.R. Offic. Trans. 111, 125, 117 P.R. Dec. 94, 105 (1986). Under Puerto Rico law, a legal duty arises in one of three ways: (1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation. De-Jesus-Adorno, 160 F.3d at 842 (citing Saracco v. Consejo de Titulares del Condominio

**Civil No. 07-1785 (GAG)**

Coral Beach, 1993 WL 99274, at *3 (D.P.R. 1993). Under Article 1803 of the Puerto Rico Civil Code the obligation imposed by Article 1802 "is demandable, not only for personal acts or omissions, but also for those of the persons for whom they should be responsible." P.R. Laws Ann. tit. 31, § 5142. "Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties." Id.

Reliable argues that there is no basis for a finding of liability under Articles 1802 and 1803 of Puerto Rico's Civil Code, since the repossession of the vehicle at issue in this case was conducted in accordance with the requirements of the Puerto Rico Commercial Transactions Act. This court disagrees. The Puerto Rico Commercial Transactions Act states that

> a secured party has on default the right to take possession of the collateral, provided, however that in a consumer secured transaction prior to the taking of possession, the secured party shall be required to give debtor a[t] least two (2) days written notice, to the last known address of the debtor, of the intent to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

P.R. Laws Ann. tit. 19, § 2203. The statute further states that "[w]ithin twenty four (24) hours from the repossession of the collateral in any consumer secured transaction, the secured party must send written notice to the debtor, to the last known address of the debtor, to inform the debtor of the repossession of the collateral." P.R. Laws Ann. tit. 19, § 2203 (6). Thus, once a debtor in a secured transaction falls into arrears, the secured party is entitled to reposssess the collateral without judicial process, as long as adequate pre- and post- repossession notice is given, and as long as it can be done without "breach of the peace." In the instant case, there was never any contention by plaintiffs that Reliable was not a secured party who had a security interest in their vehicle, or that Santiago was not in default in the payments thereunder. Moreover, though Santiago alleges that he never received the pre- and post- repossession notices sent by Reliable, it is undisputed that the latter sent such notices to one of Santiago's addresses. Under such circumstances Reliable, as the secured party, had the right to take possession of the vehicle, and to do so without judicial process, if it could be done without "breach of the peace."

**Civil No. 07-1785 (GAG)**

"Breach of the peace" is not defined by the Puerto Rico Commercial Transactions Act or any comment thereunder, nor has the statute at issue here been the object of analysis by the Puerto Rico local courts. However, long before the current self-help repossession statute came into existance, the Puerto Rico Supreme Court recognized that Puerto Rico's conditional sales law derives from the Uniform Commercial Code, and used federal and state law jurisprudence to analyze the tort of wrongful repossession. See Vélez Cuebas, et al. v. Cancel, 1963 WL 14910, at *3, 88 P.R. Dec. 220, 226-27 (1963) (comparing the self-help repossession statute in the Uniform Commercial Code, U.C.C. § 9-503, with Article 6 of the Conditional Sales Law of Puerto Rico, P.R. Laws Ann. tit. 10, § 36 (repealed 1996), which provided for repossession only by judicial action). In Vélez-Cuebas, Puerto Rico's highest court cited various state cases which stood for the proposition that once a debtor resists repossession, the same is not peaceable, and the repossessor should desist from taking possession without recourse to the courts. Id. at *3 (citing, *inter alia*, Ranaire v. Corp. v. Vaughn, 142 A.2d 148 (D.C. 1958)); cf. Wallace v. Chrysler Credit Corp., 743 F.Supp. 1228, 1232 (W.D. Va. 1990) (creditors may enter the debtor's land and repossess collateral because the creditor's security interest is considered more important than a tresspass; "if, however, the debtor is present and makes an objection, the breach of the peace analysis comes to the fore: the creditor's agent must then desist."). In addition, many contemporary state-side cases that analyze similar self-help repossession statutes hold that the presence of a law enforcement officer during a self-help repossession renders the repossession unlawful. See Fleming-Dudley v. Legal Investigations, Inc., 2007 WL 952026, *6-7 (N.D. Ill. 2007) (citing Waisner v. Jones, 107 N.M. 260, 755 P.2d 598, 602 (N.M. 1988) and Stone Mach. Co. v. Kessler, 1 Wash.App. 750, 463 P.2d 651, 655 (Wash. App. Ct. 1970)); see also In re 53 Foot Trawler Pegasus, 2008 WL 4938345, *4-7 (M.D. Fla. 2008). That is because the "presence of the official, without more, is sufficient to chill the legitimate exercise of the defaulting party's rights." Fleming-Dudley, 2007 WL 952026, *6 (quoting Waisner, 755 P.2d at 602); accord, e.g., In re MacLeod, 118 B.R. 1, 3 (Bankr. D.N.H. 1990) (any presence of an officer, regardless of the officer's degree of participation in the actual repossession, "override[s] the debtor's right to object"

**Civil No. 07-1785 (GAG)**

and, as a result, is a breach of peace). Thus, when a statute requires a self-help repossession to be carried out without a breach of the peace, a creditor cannot use the power of the state to prevent a breach of the peace from occurring, thereby circumventing the statutes' requirement. If law enforcement is needed, then a breach of the peace has occurred, and the creditor must secure judicial intervention to carry out the repossession.

As in the present case it is undisputed that officers were present at the repossession of plaintiff Santiago's vehicle, the court cannot grant summary judgment dismissing plaintiffs' state law claims under Articles 1802 and 1803 of the Puerto Rico Civil Code. The court also discards Reliable's alternative argument, that plaintiffs' claims should be dismissed because no recoverable damages were suffered by the plaintiffs, since plaintiffs have alleged and testified at their deposition as to more than nominal damages. Therefore, the court **DENIES** summary judgment on these grounds.

**IV.   Conclusion**

For the aforementioned reasons, the court **DENIES** defendants' motion for summary judgment (Docket No. 87). The court advises the plaintiffs that even though they have surpassed the summary judgment hurdle, this does not mean that on the merits they in fact have a viable Section 1983 cause of action against defendants. Moreso, the issue of state action in this case seems to hang by a thread.

**SO ORDERED.**

In San Juan, Puerto Rico this 4th day of May, 2009.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge

14